UNITED STATES DISTICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOSEPH DAVID BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-147 |
| | ) | Judge Aleta A. Trauger |
| STATE OF TENNESSEE, | ) | |
| TENNESSEE REHABILITATIVE | ) | |
| INITIATIVE IN CORRECTION | ) | |
| (TRICOR), an agency of the State of | ) | |
| Tennessee, ROGER CLARK, JOHN | ) | |
| DAVID HART, PARTICIA WEILAND, | ) | |
| and THOMAS BURNS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION**

On January 31, 2017, the plaintiff, Joseph David Baker, filed an Application for TRO Hearing, for Temporary Restraining Order, and to Set Preliminary Injunction Hearing or for Other Relief. (Docket No. 5) On February 7, 2017, following a TRO hearing, the court issued a Temporary Restraining Order, which remains currently in effect. (Docket No. 16.) On February 15, 2017, the court held a hearing on the preliminary injunction. Upon the pending Application and supporting materials, the defendants' Response thereto (Docket No. 18), and the testimony and documentary evidence before the court at the February 15, 2017 hearing, and for the reasons discussed herein, the court will grant a preliminary injunction in favor of Mr. Baker.

**PROCEDURAL HISTORY**

On January 20, 2017, Mr. Baker filed this constitutional action under 42 U.S.C. § 1983 against his employer, TRICOR, as well as the State of Tennessee and the individual defendants

1

(Roger Clark, John David Hart, Patricia Weiland,[1] and Thomas Burns), who are TRICOR employees. (Docket No. 1.) TRICOR is a Tennessee agency that operates alongside the State of Tennessee Department of Corrections (TDOC) to provide rehabilitative services to TDOC inmates. Mr. Baker is an Operations Manager at the Bledsoe County Correctional Complex, a TDOC medium security prison ("Bledsoe"). The basis of Mr. Baker's Complaint is that he was required, as a condition of his employment with TRICOR, to 1) read the book *This Ain't No Practice Life* by Michael Burt (the "Book"), 2) attend training sessions on a TRICOR coaching program for inmates that is based on the Book and other materials available on Mr. Burt's website (the "Coaching Program"), and 3) deliver the Coaching Program to inmates at Bledsoe, as a condition of the inmates' participation in other TRICOR programming. According to the Complaint, placing these requirements on Mr. Baker, as an employee of a state agency, violates his rights under the establishment clause of the First Amendment to the United States Constitution because the Coaching Program, along with the Book and other materials on which it is based, contains heavily religious content. In addition to compensatory and punitive damages, the Complaint seeks a TRO and preliminary and permanent injunctive relief.

On January 31, 2017, Mr. Baker filed the Application for TRO Hearing, for Temporary Restraining Order, and to Set Preliminary Injunction Hearing or for Other Relief. (Docket No. 5.) In his Application, Mr. Baker asserted that he was scheduled to return to work at TRICOR on February 7, 2017, following a leave of absence. Mr. Baker argued that, absent a court order, he would be forced to participate in training sessions for the Coaching Program and deliver the Coaching Program curriculum to inmates at Bledsoe, in violation of his constitutional rights,

---

[1] The parties have conceded that Ms. Weiland is currently retired from her employment with TRICOR and she, therefore, will not be subject to this preliminary injunction, just as she is not subject to the previously issued TRO.

2

and/or would face the prospect of adversarial employment action in retaliation for his complaints, his refusal to comply with the Coaching Program requirements, and his filing of this legal action. On February 7, 2017, the court held a TRO hearing, at which a representative from the Tennessee Attorney General's Office appeared and stated that the office had a "conflict" and had not yet secured legal counsel to represent the defendants. Following the TRO hearing, the court issued a Temporary Restraining Order, prohibiting the defendants from 1) requiring Mr. Baker to attend training sessions related to the Coaching Program or any other religious training, 2) requiring Mr. Baker to teach the Coaching Program or any religious-based program to inmates, 3) requiring Mr. Baker to read or study any of Mr. Burt's materials, including the Book, or any other religious-based content, 4) retaliating against Mr. Baker in any way, including taking any negative employment action against him or singling him out in any fashion, and 5) discriminating against Mr. Baker in terms of his compensation, privileges, or benefits of employment with TRICOR. (Docket No. 16.)

On February 15, 2017, the defendants filed a Response in opposition to Mr. Baker's pending Application, arguing that preliminary injunctive relief should be denied as to all defendants due to the unlikelihood of Mr. Baker's success on the merits and that, further, the individual defendants are entitled to qualified immunity. (Docket No. 18.)

On February 15, 2017, the court held an evidentiary hearing with respect to Mr. Baker's request for a preliminary injunction.

# FINDINGS OF FACT[2]

Mr. Baker's employment duties as an Operations Manager for TRICOR require him to oversee a flooring plant on the grounds of Bledsoe, in which TDOC inmates housed at Bledsoe are given the opportunity to work for Shaw Industries ("Shaw"), a private flooring corporation that has contracted with TRICOR. Inmates who work for Shaw in the flooring plant earn $7.25 per hour for their labor, some of which income they can save for their use upon release. By comparison, inmates who are employed by TDOC earn only $0.17 to $0.52 per hour. As a condition of participating in TRICOR programming, including employment at the Shaw flooring plant, inmates are required to attend available lessons under the Coaching Program.

In December of 2015, Mr. Baker was informed that, as a condition of his employment with TRICOR, he was required to read the Book,[3] participate in training sessions to learn how to teach the Coaching Program, and then deliver the Coaching Program to inmates working in the Shaw flooring plant at Bledsoe. The training sessions were run by individual defendants Mr. Hart and Mr. Clark, who were also Mr. Baker's superiors at TRICOR. The Book, which is a type of self-help guide, contains an abundance of references to religion and Christianity as the basis for the principles espoused throughout, including, by way of example the following:

- In the Book's Introduction, on page 27, it states: "In the Bible, the Word says that God is close to the brokenhearted. It could be that you're going through some adversity to humble your spirit and draw you closer to your Creator, and that ain't

---

[2] The court makes the following findings of fact based on the documents in the record and the testimony before the court at the February 15, 2017 hearing. All citations to exhibits refer to exhibits entered during the February 15, 2017 hearing. These findings are issued for the limited purpose of deciding Mr. Baker's request for a preliminary injunction.
[3] For purposes of this opinion, the "Book" refers to the version of This Ain't No Practice Life that was given to Mr. Baker by his TRICOR superiors in late 2015 and has been most recently revised and updated in 2010 (Plaintiff's Exhibit 1). The record reflects that the Book was revised in 2015 and a newer version was issued (Plaintiff's Exhibit 2), though that version is substantially the same as the first with respect to the content referenced herein.

a bad thing in the grand scheme of things. In this book, we'll take a look at exactly how to use adversity to create intentional breakthroughs."

- In the discussion of the Book's first principle, entitled "Experience an Awakening," the following language is found on pages 67-68: "The spirit's need is to connect to something larger, to be a part of something beautiful, to contribute. It also has a need to connect to conscience and act in thoughtful ways to human kind. This would be SQ (spiritual intelligence)."

- A discussion of the Book's second principle, "Design Your Own Dream," contains the following language on page 92: "Remember, this voice is when you are marrying our natural, God-given talent and passions with a need in the world . . . ."

- In the discussion of the fourth principle, "Make Learning a Way of Being," the reader is advised on page 128 to "[r]ead spiritual material in the morning."

- The section of the Book discussing the fourth principle also contains the following passage on page 129: We have two eyes and two ears and only one mouth for a reason. I think the Good Lord was trying to tell us something with that."

(Plaintiff's Exhibit. 2.) The Book also contains numerous quotes from the Bible and religious leaders as well as countless references to "God," the "Creator," and the reader's own soul, spirit, and spirituality. In addition, printed excerpts from Mr. Burt's website (which Mr. Baker was encouraged to read alongside the Book) show that it contained explicit references to Mr. Burt's Christian faith upon which the Book is based. (Plaintiff's Exhibit 7.) The written training materials for the Coaching Program and the lesson plans to be used with inmates similarly contain references to spirit, spirituality, and religion. (See Defendants' Exhibits 1 and 2.) They also contain other more overt religious references such as, for example, the following language in the printed materials for Lesson 35: "We co-create our life with our Creator. We must stay aligned with our Creator and exercise our free will to create." (Defendants' Exhibit 2, p. 42.)

Moreover, the Coaching Program's printed training materials for TRICOR employees and printed lesson plans for inmates are relatively sparse, and it is clear that they cannot be

5

implemented without additional guidance. (See Defendants' Exhibits 1 and 2.) The witnesses testified that this guidance came in the form of lectures given to TRICOR employees during the training sessions and that these lectures were closely derived from the Book. Mr. Baker was further repeatedly told by TRICOR's Chief Operating Officer, Mr. Hart, that he could simply read to the inmates from the Book if necessary, in order to impart the principles identified in the Coaching Program lessons.

On January 24, 2016, Mr. Baker sent an email to all of the individual defendants, advising them that he did not agree with the Book on a religious or philosophical level and requesting to be excused from participating in the training sessions for the Coaching Program. (Plaintiff's Exhibit 3.) The following day, Mr. Clark, who was Mr. Baker's superior, responded in an email copied to Mr. Hart that Mr. Baker could not be excused from the training. (Plaintiff's Exhibit 4.) In that same email, Mr. Clark stated:

> In order to best serve our offenders, TRICOR has adopted a systematic method based on Coach Michael Burt's book "This ain't no practice life" and the seven decisions therein. Coaching is required at all locations throughout TRICOR and the training to become a coach is mandatory. . . . Most of all, we are here to transform the lives of the offenders we serve . . . . . The Seven Decisions provides a blueprint for that transformation.

(*Id.*)

In addition to his own ethical objections to participating in the Coaching Program, Mr. Baker was also fearful of carrying out the Coaching Program with inmates at Bledsoe. Mr. Baker testified that the Bledsoe inmates he worked with at the Shaw flooring plant were of all different religious and non-religious orientations, including atheist, agnostic, Muslim, Wiccan, Native American, and various denominations of Christianity. He feared that inmates might retaliate against him for conditioning their work (and higher wages) at the Shaw plant on participation in the Coaching Program and that this retaliation could potentially range from

6

physical violence to filing a lawsuit against Mr. Baker for violation of the inmates' own constitutional rights.

After lodging his objection to participating in the Coaching Program, Mr. Baker testified that he was treated differently by his superiors and felt excluded at work. Mr. Baker further testified that, in March of 2016, individual defendant Mr. Burns, a TRICOR employee with less experience and qualifications than Mr. Baker, was promoted over Mr. Baker and became Mr. Baker's superior. TRICOR managers represented that Mr. Burns's promotion was due to the fact that Mr. Burns demonstrated compliance with TRICOR's "coaching culture" (Plaintiff's Exhibit 12), a phrase that Mr. Baker said he understood to be synonymous with embracing the Coaching Program and the principles espoused therein. Mr. Baker further testified that Mr. Burns, Mr. Hart, and Mr. Clark all spoke frequently to Mr. Baker about the Coaching Program as integral to TRICOR's culture. Mr. Baker understood this to mean that he had to embrace the Coaching Program in order to be successfully integrated into his position at TRICOR and to feel secure in his at-will employment.

Mr. Baker feared for the security of his job because he is an at-will employee. As a result, he misrepresented to TRICOR that he was teaching Coaching Program lessons to Bledsoe inmates when, in fact, he was not. This situation caused a great deal of stress to Mr. Baker, leading to physical ailments including high blood pressure, insomnia, and stomach troubles. Mr. Baker sought the care of an osteopathic physician, who recommended that he take a leave of absence from work. Mr. Baker has since used up most of his sick time and vacation time, and he has continued to worry about his ability to successfully return to work in light of his unwillingness to participate in the Coaching Program. Mr. Baker testified that, even after the court issued the TRO in this action, he was twice detained upon attempting to enter the Bledsoe

7

facility where he works and was specifically told that Mr. Burns had instructed guards at Bledsoe not to allow Mr. Baker to enter the premises.[4]

Susan Cunningham, TRICOR's Director of Talent Management, testified for the defense that she prepared both the training materials for TRICOR employees related to the Coaching Program and the Coaching Program curriculum for TDOC inmates, utilizing the services of Mr. Burt as a consultant and relying heavily on the Book. Ms. Cunningham admitted that TRICOR quite possibly spent at least $100,000 on Mr. Burt's consulting services in preparing the Coaching Program materials. She further admitted that Mr. Baker was required to read the Book in his spare time and was also advised to visit Mr. Burt's personal website. Ms. Cunningham also testified that TRICOR was mindful, as a state agency, of the need to ensure that its programming did not conflict with the religious beliefs of its employees or the inmates being served. In response to Mr. Baker's complaints about the Coaching Program, Ms. Cunningham testified that she was tasked with reviewing the Book and all Coaching Program materials (including training materials for TRICOR employees and curriculum materials to be presented to TDOC inmates) to ensure that there was no improper religious content. She testified that she concluded there was no such religious content, and no need for TRICOR to change any of the Coaching Program curriculum or resources. Ms. Cunningham could not, however, explain how the use of the word "Creator" in Coaching Program materials, for example, is not an improper religious reference, and she even conceded in her testimony that this is something that might need to be revised.

---

[4] As the court stated at the February 15, 2017 hearing, this action, if motivated by a desire to retaliate against Mr. Baker for asserting his constitutional rights, was a violation of the TRO.

8

# LEGAL STANDARD FOR PRELIMINARY INJUNCTION

The Sixth Circuit has held that the district court must balance four factors when considering a motion for preliminary injunction under Federal Rule of Civil Procedure 65: 1) whether the movant has a strong likelihood of success on the merits, 2) whether the movant would suffer irreparable injury without the injunction, 3) whether the issuance of the injunction would cause substantial harm to others, and 4) whether the public interest would be served by the issuance of the injunction. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (citing *PACCAR Inc. v. TeleScan Techs., LLC*, 319 F.3d 243, 249 (6th Cir. 2003)). The Sixth Circuit has further held that, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits will often be the determinative factor.'" *Id.* (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

# ANALYSIS

As a preliminary matter, the court finds that there is no merit to the defendants' argument that the individual defendants are entitled to qualified immunity. As the defendants note in their briefing, qualified immunity does not apply to state officials who violate "clearly established constitutional rights of which a reasonable person would have known." *Ward v. Members of Bd. of Control of Eastern Michigan Univ.*, 700 F. Supp. 2d 803 (E.D. Mich. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)); *see also Johnson v. Mosely*, 790 F.3d 649, 653 (6th Cir. 2015) (holding that qualified immunity ordinarily applies, "unless the contours of the asserted right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right"). The right to freedom from religious indoctrination is such a basic tenet of constitutional law that it is impossible to imagine it not being sufficiently clear to any

9

official of a state agency that requiring another state employee to engage in a religious-based program as a condition of his or her employment violates the employee's constitutional rights.

In addition, the record clearly reflects that, not only did TRICOR have at least an informal policy against religious-based programming for employees or inmates (as reflected by Ms. Cunningham's testimony), but Mr. Baker placed TRICOR and the individual defendants on notice of the alleged constitutional violations. In addition, Ms. Cunningham testified that, following Mr. Baker's complaints, she reviewed the materials associated with the Coaching Program, ostensibly to ensure that they did not contain any religious-based content, an admission that TRICOR and its employees were well aware that the inclusion of religious-based content in the Coaching Program could violate Mr. Baker's constitutional rights. The defendants' decision to overlook the religious-based content or discount it as not religious, so as to continue to require Mr. Baker to participate in the unmodified Coaching Program as a condition of his employment, is precisely the type of conduct that is not protected by qualified immunity. Accordingly, the court will not deny Mr. Baker's request for preliminary injunction against the individual defendants on qualified immunity grounds. The court will now turn to considering the factors for whether a preliminary injunction should issue in this case.

## I. Likelihood of Mr. Baker's Success on The Merits

The Sixth Circuit has applied a three-factor test to determine whether a state agency's provision of mandatory programming violates the Establishment Clause of the United States Constitution: 1) whether the practice has a secular purpose, 2) whether the effect advances religion, and 3) whether the practice fosters excessive government entanglement with religion. *Doe v. Porter*, 370 F.3d 558, 562 (6th Cir. 2004) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971)); *see also Smith v. Jefferson County Bd. of School Comm'rs*, 788 F.3d 580, 596-97

(6th Cir. 2015). Another district court in this circuit has specifically held, based on precedent from United States Courts of Appeal, that forcing a prisoner or parolee to attend a religious-based alcohol and narcotics programs as a condition of his or her confinement or parole violates the Establishment Clause. *Goodwin v. Hamilton*, No. 10-cv-11909, 2011 WL 893118, at * 4 (E.D. Mich. March 14, 2011).

The fact that the Coaching Program as a whole may have a secular purpose of rehabilitating TDOC inmates and preparing them for release and reentry does not mitigate the fact that there is likely no secular purpose to the inclusion of religious-based content in the Coaching Program's materials. In fact, the parties do not appear to disagree that it would be a violation of the Constitution for TRICOR to force its employees to attend training in a religious-based program and convey such a program to TDOC inmates. Rather, the heart of the disagreement between the parties is whether the Coaching Program does, in fact, contain religious content. The defendants conceded on the record at the February 15, 2017 hearing that the Book contains religious content. They appear to argue, however, that the training sessions and the curriculum for inmates can be carried out without reliance on this religious content. The court finds this argument without merit, as it is clear that the Coaching Program is inextricably intertwined with the Book. Not only did Ms. Cunningham testify that the Coaching Program is primarily based on the Book, Mr. Baker was also required to read the Book as a part of the training and was advised that he could read from the Book to inmates in delivering the lessons. Finally, the court finds that it would be impossible to successfully implement the Coaching Program in its current form without engaging with the content of the Book.

In arguing that requiring Mr. Baker to participate in the Coaching Program does not violate his rights under the Establishment Clause, the defendants rely on an out-of-circuit district

11

court case that rejected a constitutional challenge to a mandatory prison rehabilitation program that allegedly contained improper religious elements. *Gray v. Johnson*, 436 F. Supp. 2d 795 (W.D. Va. 2006). In *Gray*, however, there were no allegations that the curriculum of the program itself, or presentations by the program coordinators, contained any religious references. Rather, the challenged aspect of the program was the fact that the coordinators allowed other inmate participants to share with the group their personal religious beliefs during group discussions. The Western District of Virginia found that this did not undermine the clearly secular purpose of the program itself (including the secular purpose of allowing of this sort of group sharing), nor did it constitute a state advancement of religion or establish any excessive entanglement by the state with religion. Moreover, *Gray* relies on another district court opinion, *Nussbaum v. Terrangi*, wherein the district court found that the establishment clause *was* violated by a mandatory prison rehabilitation program that taught principles of spirituality and encouraged participants to have faith in a "higher power." 210 F. Supp. 2d 784, 788-89 (E.D. Va. 2002). This is precisely the type of content at issue with respect to the Coaching Program.

While the court finds that there is likely a great deal of secular content in the Coaching Program that would be of significant value to TDOC inmates at Bledsoe and elsewhere, and that it might be a worthwhile endeavor to require TRICOR employees to coach TDOC inmates on some of this secular content, the court cannot overlook the improper religious aspects that are present throughout the Coaching Program. Nor can the court overlook the unwillingness of TRICOR to rework the Coaching Program to eliminate this religious content in light of Mr. Baker's complaints. For these reasons, the court finds that Mr. Baker has a strong likelihood of success on the merits in this action.

## II. Remaining Factors

The court finds that there is little evidence in the record of any harm to the defendants or to anyone else that will result from issuing the requested injunctive relief.[5] On the contrary, there is evidence of the potential for significant injury to Mr. Baker if this injunction is not granted. In addition to the infringement upon his religious freedoms, Mr. Baker has clearly established that he has reasonable grounds to fear retaliation from inmates if he were to participate in the Coaching Program. He has also sufficiently established that he has reason to fear for the security of his employment with TRICOR and his ability to peacefully continue his employment and take advantage of all associated privileges, benefits, and opportunities in light of his complaints and refusal to participate in the Coaching Program. Mr. Baker has shown that he has already been made to feel excluded in his work environment, has been passed over for a promotion, and – even after this court issued the recent TRO – has been delayed in entering his workspace. He has already suffered physical injury as a result of the stress this situation has caused him, has used up work and vacation time to take a leave of absence from his employment as a result of the conditions there, and will potentially suffer additional harms of this nature if he is not afforded injunctive relief pending the resolution of this action. Finally, there is a significant public interest in upholding the constitutional protections of separation of church and state. For these reasons, the court finds that the balance of the equities weighs strongly in favor of issuing preliminary injunctive relief to Mr. Baker.

## CONCLUSION

For the foregoing reasons, Mr. Baker's request for a preliminary injunction will be granted. A preliminary injunction will issue against the State of Tennessee, TRICOR, Roger

---

[5] In fact, the defendants did not even present argument on what harms to them, if any, would flow from the issuance of a preliminary injunction.

Clark, John David Hart, and Thomas Burns, pursuant to which each of these parties will be ordered:

1) Not to require, mandate, order, direct or urge Mr. Baker to attend any training sessions related to the Coaching Program or any other religious-based training in any form while at any TRICOR-managed or operated facility;

2) Not to require, mandate, order, direct, or urge Mr. Baker to teach the Coaching Program or any other religious-based program in any form to TDOC inmates or any other persons on behalf, or for the benefit, of TRICOR;

3) Not to require, mandate, order, direct, or urge Mr. Baker to read, study, or review any of the Coaching Program materials, including the Book and other materials prepared by Mr. Burt, or any other religious-based content, either while at the workplace or in his own personal time;

4) Not to retaliate against Mr. Baker, single him out in any way, or take any adverse or negative action against him – including but not limited to termination or demotion, discrimination with respect to the privileges and benefits associated with TRICOR employment, detention or delay of Mr. Baker upon entering Bledsoe or any other TRICOR facilities, or any other actions that would impede Mr. Baker's ability to access his workspace and carry out his duties and responsibilities as a TRICOR employee – based on his complaints about the Coaching Program, his assertion of his constitutional rights, his filing of this action, or any other actions taken by Mr. Baker in this litigation;

5) Not to require, mandate, order, direct, urge, encourage, or signal to any TRICOR agent, representative, or employee, or to any other person or entity to take any action or engage

in any reprisal against Mr. Baker for complaining about the Coaching Program, asserting his constitutional rights, or pursuing this lawsuit.

_____
ALETA A. TRAUGER
United States District Judge